UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVELL NICOLAS-ALFONZO HENRY,

    Petitioner,　　　　　　　　　　　Case No. 2:18-CV-13172

v.　　　　　　　　　　　　UNITED STATES DISTRICT COURT JUDGE
　　　　　　　　　　　　　　　　GERSHWIN A. DRAIN
PATRICK WARREN,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Travell Nicolas-Alfonzo Henry, ("petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g.*, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

Defendant's conviction arises from the shooting death of Ronald Ford III on August 23, 2015. The prosecution's theory at trial was that Ford, a marijuana dealer, was shot and robbed of his marijuana during a transaction that defendant had arranged and attended. Allen Nathaniel Thompson, a 16–year-old juvenile at the time of the offense, was also charged in the matter. [1]

Defendant had arranged marijuana sales in the past between Ford and defendant's acquaintances. Because Ford did not want to sell marijuana to strangers, defendant would accompany new buyers to their meetings with Ford. On the date of Ford's murder, defendant and Thompson were both residential students at the Job Corps campus in Detroit. Thompson asked defendant to arrange a marijuana sale between Ford and Thompson's brother, Tyvair Wilkins. Defendant and Thompson left the campus that day without permission by climbing over a perimeter fence. They traveled by bus to the Dickerson and Promenade area, where they were to meet Wilkins to complete the transaction with Ford. Ford was fatally shot inside his vehicle during the transaction. Defendant and Thompson returned to the Job Corps campus with two backpacks, marijuana, and a scale taken from Ford's vehicle.

Using text messages found on Ford's cellular telephone, the police linked defendant to the shooting as he had arranged to meet with Ford, communicating with Ford by text messaging, regarding quantities of drugs in the hours leading up to the murder. After defendant was charged, he agreed, with the assistance of counsel, to voluntarily give the police a written statement explaining his role in the matter. Defendant admitted that he set up the marijuana sale between Ford and Wilkins, but denied shooting Ford or having any knowledge that Wilkins or Thompson intended to rob or shoot Ford. Defendant testified to this version of events at trial. After defendant was convicted, he filed a motion for a new trial on the basis that trial counsel was ineffective for allowing defendant to give a statement to the police and to testify at trial, and for failing to call as witnesses Thompson, Wilkins, or the unnamed husband of a neighborhood witness, Jonetta Stewart ("Mr. Stewart"). After conducting a *Ginther* [2] hearing, the trial court denied his motion.

---

[1] Thompson was convicted, following a jury trial, of second-degree murder, MCL 750.317. This Court subsequently affirmed Thompson's conviction. *People v. Thompson*, unpublished opinion per curiam of the Court of Appeals, issued August 15, 2017 (Docket No. 335399) (Footnote original).

[2] *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973) (Footnote original).

*People v. Henry*, No. 331326, 2017 WL 4158014, at * 1 (Mich. Ct. App. Sept. 19, 2017). Petitioner's conviction was affirmed on appeal. *Id.*; *lv. den.* 910 N.W.2d 288 (Mich. 2018). Petitioner seeks habeas relief on the following ground:

> Mr. Henry's trial counsel, Patrick Nyenhuis, failed to provide constitutionally effective assistance of counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

Petitioner alleges he was denied the effective assistance of trial counsel.

Petitioner must satisfy a two-prong test in order to establish that he was denied the effective assistance of counsel. First, a criminal defendant must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the

4

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. at 689. Thus, a defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be sound trial strategy. *Id.* Second, the defendant must show that such performance prejudiced his or her defense. *Id*. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Court notes that on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's*

standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105.

Petitioner first argues that trial counsel was ineffective for failing to investigate Jonetta Stewart's husband or to call him to testify as a defense witness. Petitioner argues that Mr. Stewart could have provided exculpatory evidence

6

because he witnessed the shooting and may have been able to identify the actual perpetrators of the shooting.

The Michigan Court of Appeals rejected petitioner's claim:

We first address defendant's argument challenging trial counsel's decision to not call Mr. Stewart as a witness at trial. The record reflects that trial counsel was aware that during the course of their investigation, the police had spoken to a woman who lived near the scene of the shooting, Jonetta Stewart, who heard the shooting and saw some men remove items from Ford's car, but was unable to identify the men involved. Aware that multiple police efforts to contact Mr. Stewart were not fruitful, trial counsel explained at the *Ginther* hearing that he did not want to independently seek out a witness who might "solidify" the identification of defendant. Defendant argues that this explanation should be rejected because trial counsel failed to contact Stewart to ascertain what he would have said. Defendant speculates that Mr. Stewart would not have given incriminating testimony, reasoning that the prosecution would have called him as a witness if this were true. Defendant acknowledges, however, that he does not know what testimony Mr. Stewart would have actually given.

As an initial matter, defendant fails to show that trial counsel's performance fell below an objective standard of reasonableness. For example, defendant has not overcome the strong presumption that trial counsel's decision to not call Mr. Stewart as a witness was the product of sound trial strategy. Defendant has also not demonstrated that Mr. Stewart would have been a cooperative witness providing favorable testimony to his defense if trial counsel had in fact contacted him and obtained a statement. As noted above, defendant bears the responsibility of establishing the factual predicate for his claim. Put simply, there is nothing in the record to lead us to conclude, under these circumstances, that trial counsel's decision to not contact Mr. Stewart was anything but the exercise of reasonable professional judgment.

Moreover, defendant has also not demonstrated that the decision not to call Mr. Stewart as a witness at trial was prejudicial to his defense. Put simply, defendant has not provided an affidavit or other offer of proof

that Mr. Stewart's testimony could have provided a substantial defense. Defendant's contention that the prosecution would have called Mr. Stewart if Mr. Stewart's testimony would have been inculpatory is likewise based on speculation. Detroit Police Detective Laura Manzella testified that after multiple diligent attempts during the course of her investigation of Ford's murder, she was not successful in speaking with Mr. Stewart as he did not respond to her. Accordingly, there is no indication that the prosecution was aware what information Mr. Stewart could provide. Mr. Stewart was also not listed on the prosecution's witness list. Moreover, ample record evidence established defendant's presence at the scene of Ford's murder, that he had been in contact with Ford to set up the marijuana sale, and that he and Thompson traveled together from Job Corps to meet Ford. Defendant himself testified to these facts, and defendant also testified that he approached Ford in his vehicle after he was shot and checked his pulse. Therefore, even if Mr. Stewart testified that Wilkins or Thompson shot Ford and took his drugs, this would not have undermined the reasonable inference that defendant acted in concert with them as an aider and abettor, MCL 767.39. Additionally, Mr. Stewart would not have been able to offer any testimony concerning defendant's knowledge of Thompson's and Wilkins's plans, or defendant's intent to act in concert with them. Moreover, Jonetta Stewart's testimony indicated that Mr. Stewart saw "guys running through the back," indicating that he might have seen defendant, Wilkins, and Thompson all running the same direction after the shooting. Put simply, it is highly unlikely Mr. Stewart's testimony would have been exculpatory for defendant.

*People v. Henry*, 2017 WL 4158014, at * 2–3 (internal citations and footnotes omitted).

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his or her defense. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th

Cir. 2002). Here, Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct an adequate investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002). For example, petitioner failed to provide the Michigan courts or this Court with an affidavit from Mr. Stewart concerning his proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavit sworn by Mr. Stewart, petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Mr. Stewart would have testified and what his proposed testimony would have been. Without such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or to call Mr. Stewart as a witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81

(2011). Therefore, *Cullen* would preclude the Court from considering any new evidence that petitioner would even want to present at this point in support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *See also Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record). Petitioner presented no evidence to rebut the presumption that counsel's decision to forego interviewing Mr. Stewart or calling him as a witness was strategic or that the outcome of the trial would have been different had he been called to testify.

In any event, defense counsel testified at the *Ginther* hearing that he decided not to call Mr. Stewart as a witness because he was afraid that Mr. Stewart might bolster the identification of petitioner as one of the perpetrators. Counsel's decision to forego calling Mr. Stewart out of fear that it risked opening the door to additional incriminating testimony was a strategically defensible choice that defeats petitioner's claim. *See Jackson v. Bradshaw,* 681 F. 3d 753, 761 (6th Cir. 2012).

Finally, a defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004) (internal quotation omitted). As noted by the Michigan Court of Appeals, petitioner admitted setting up the drug deal and being present at the shooting. Even if Mr. Stewart testified that petitioner was not the actual shooter,

he could not have absolved him from being convicted as an aider and abettor. Accordingly, petitioner is not entitled to relief on this claim.

Petitioner next claims that trial counsel was ineffective for advising petitioner to make a statement to the police and to subsequently testify at trial, arguing that it was detrimental to his case because defense counsel did not obtain any consideration from the police in exchange for his statement to the police. Petitioner also argues he was prejudiced because his statement to the police and his trial testimony bolstered the prosecution's case.

The Michigan Court of Appeals rejected this claim:

> Although defendant argues that trial counsel should have negotiated for him to receive a benefit from the prosecution in exchange for his police interview, he does not explain what this benefit might have been. The record reflects that defendant asserted his innocence at the outset, ultimately rejecting an offer from the prosecution for him to plead guilty to second-degree murder and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Further, the defense theory at trial was that defendant planned the marijuana sale transaction between Ford and Wilkins without any knowledge that Wilkins planned to shoot Ford and steal his marijuana. Defendant does not suggest any other means of advancing this theory without his own testimony. Similarly, if defendant had not given a statement to the police during their investigation, and had not testified in a similar fashion at trial, the police and jury would not have heard defendant's side of the story: that defendant considered Ford to be his friend, that he had previously arranged numerous other marijuana transactions in which Ford was not set up for robbery, and that he did not intend for Ford to be robbed or killed.

> Defendant next argues that his testimony and statement bolstered the prosecution's case, because without his explanation that he was acting as a middleman in a drug sale, there would have been no evidence that

he was aiding Thompson and Wilkins. This argument is unpersuasive because the prosecutor introduced substantial evidence from which the jury could infer that the trio acted together. For example, defendant and Ford exchanged text messages in the hours leading up to the murder to plan the drug sale between Ford and Wilkins. Evidence at trial established that defendant and Thompson traveled together to and from Job Corps, and that they brought back with them Ford's backpacks and drugs following his murder. Cellular telephone evidence placed defendant in the area of the shooting contemporaneously with a call to 911 reporting the shooting. This evidence, taken together, firmly supported the inference that defendant acted together with Thompson and Wilkins. Defendant's testimony further supported this inference, but any negative effect must be weighed against the advantage of explaining to the jury that defendant had no intention of aiding a robbery or homicide. Waiving his right to silence was a risk that did not pay off for defendant, but this does not establish that trial counsel was incompetent in advising him of the advantages and disadvantages of testifying. Trial counsel's advice was not objectively unreasonable merely because it may not have been successful.

Defendant further argues that speaking to the police led them to Brandy Hill, who testified about defendant's actions and behavior in the time period following Ford's murder. According to defendant, without his statement to the police, he might not have been convicted. Defendant further alleges that the jury's request for clarification on the law concerning aiding and abetting indicates that the jury was uncertain about his involvement in the robbery. This argument is entirely speculative. First, Hill's testimony did not directly inculpate defendant. While defendant argues that her testimony portrayed him in a bad light, suggesting that he was unsympathetic about Ford's death, this potentially negative side effect of giving the statement must be weighed against the potential benefits. Defendant conceded at the *Ginther* hearing that he and trial counsel had discussed whether defendant should testify and that he was aware that it was his decision whether to testify. Defendant also acknowledged that, in his view, the prosecution's evidence did not accurately portray what actually happened and that his testimony was necessary for the jury to hear "my side of the story, and my life, what actually took place."

> Moreover, trial counsel testified at the *Ginther* hearing that from the first day he met defendant, defendant was adamant and insistent about giving the police a statement to put forth his version of events. Trial counsel noted that he advised defendant to wait to give a statement until a proffer letter was tendered, so that any statement defendant made would inure to defendant's benefit. Trial counsel also testified it was necessary for defendant to testify at trial to explain why he was at the scene of the shooting, and that he and defendant collaborated to devise this trial strategy. On this record, defendant has not established that trial counsel's performance was objectively unreasonable.

*People v. Henry*, 2017 WL 4158014, at * 3–4 (internal citations and footnote omitted).

Petitioner failed to show that trial counsel was ineffective for allowing him to make a statement to the police. Petitioner himself admitted at the *Ginther* hearing that he told his defense counsel when he first met him that he wanted to tell his side of the story. (Tr. 10/21/16, pp. 25-26). Defense counsel also testified at the *Ginther* hearing that from the outset, petitioner wanted to make a statement to the police. (*Id.* at p. 35).

A defense attorney's decision to allow his or her client to make a statement to the police will be upheld if the decision was strategic. *See Doe v. Woodford,* 508 F.3d 563, 569 (9th Cir. 2007). Petitioner clearly wanted to make a statement to the police in order to attempt to exonerate himself and defense counsel testified as such at the *Ginther* hearing. Absent clear and convincing evidence to the contrary, petitioner cannot show that he was prejudiced by counsel's decision to allow

13

petitioner to speak with the police or that the Michigan Court of Appeals' rejection of his ineffective assistance of counsel claim was unreasonable. *See Hedrick v. True*, 443 F.3d 342, 358–59 (4th Cir. 2006). Petitioner also cannot show that he was prejudiced by counsel's advice to make a statement to the police because it was not directly incriminating in that petitioner did not admit to killing the victim or to knowing that the victim would be robbed or killed. *See Woodford*, 508 F.3d at 569.

Petitioner's related claim involving counsel's advice to permit him to testify fails for the same reason.

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Carter v. United States*, 160 F. Supp. 2d 805, 812 (E.D. Mich. 2001) (citing *Strickland*, 466 U.S. at 689). Petitioner bears the burden of proving that counsel's decision to let him testify could not be considered sound trial strategy under the circumstances. *See id.* In this case, it was not unreasonable for counsel to believe, particularly in light of the facts in this case, that petitioner was unlikely to be acquitted unless he took the stand and explained his side of the story. *See Flamer v. State of Delaware*, 68 F. 3d 710, 730-731 (3rd Cir. 1995); *see also United States v. Johnson-Wilder,* 29 F. 3d 1100, 1105 (7th Cir. 1994) (finding trial counsel allowing defendant to take the stand was not objectively unreasonable, as having the defendant testify may
14

have been his only hope of avoiding conviction). Hence, petitioner is not entitled to relief on his claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner

leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

Dated: April 17, 2019

                                        s/Gershwin A. Drain
                                        HON. GERSHWIN A. DRAIN
                                        United States District Court Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 17, 2019, by electronic and/or ordinary mail.

                                        s/Teresa McGovern
                                        Case Manager